**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**PRECISION MECHANICAL, INC.,**
**PRECISION AIR CONDITIONING OF**
**BREVARD, INC. & PRECISION**
**FABRICATING & CLEANING CO., INC. ,**

**Plaintiffs,**

**-vs-**                                                  **Case No.  6:05-cv-1353-Orl-31KRS**

**SUSAN E. KARR, RALPH E. CARVER,**
**MICHAEL J. JESKE, DAN SINCLAIR,**
**FLORIDA SMACNA, INC., and SHEET**
**METAL WORKERS' INTERNAIONAL**
**ASSOCIATION LOCAL 15, AFL-CIO, ,**

**Defendants.**

_____

## ORDER

The Plaintiffs in this case, Precision Mechanical, Inc. ("PMI"), Precision Air Conditioning

of Brevard, Inc. ("PACB"), and Precision Fabricating & Cleaning Co., Inc. ("PFCC") (collectively

referred to, where appropriate, as the "Plaintiffs") seek to challenge an arbitration award arising

out of a labor dispute.[1]  This matter is before the Court on Motions to Dismiss filed by Ralph

Carver ("Carver") and Dan Sinclair ("Sinclair"), (Doc. 16; Memorandum in Support at Doc. 17),

Susan Karr ("Karr") and Florida SMACNA, Inc. ("Florida SMACNA") (Doc. 18; Memorandum in

Support at Doc. 19), and Michael Jeske ("Jeske") and Sheet Metal Workers' International

Association Local 15, AFL-CIO (the "Union"), (Doc. 20).  The Plaintiffs filed a responsive

_____

[1] The Plaintiffs' Complaint appears at Doc. 2.

memorandum.  (Doc. 29).  The Court held a hearing on November 30, 2005, at which the parties

presented oral argument.

**I.      Background**

A. Parties

PMI, PACB and PFCC are Florida corporations doing business in Brevard County,

Florida.[2]  Karr, Carver, Jeske and Sinclair are Florida residents.[3]   Carver, Jeske and Sinclair were

members of the Florida SMACNA Local Joint Adjustment Board ("Local Joint Adjustment

Board"), which was convened by Karr and Florida SMACNA.  Florida SMACNA is a Florida

corporation doing business in Brevard County.[4]  The Union is a labor union with offices in

Seminole County, Florida, that represents workers in the sheet metal industry, including those

working in Brevard County.

B. Facts

*1) The collective bargaining agreement*

PMI and the Union entered into a collective bargaining agreement (the "CBA"), which set

forth the terms of employment for employees engaged in certain types of sheet metal, roofing,

ventilating and air conditioning work.[5]  (*See* Doc. 2, Att. 2, Ex. A).  Article 10 of the CBA sets out

_____

[2] During part of the time relevant to this case, PMI did business as "Precision Air Conditioning" ("PAC").

[3] Karr, Carver, Jeske and Sinclair reside in Brevard County, Orange County, Hillsborough County, and Orange County, respectively.

[4] During part of the time relevant to this case, Florida SMACNA was known as "Central Florida SMACNA, Inc."

[5] The CBA originally became effective on July 1, 1999.  The parties subsequently agreed, in August of 2002, to maintain the terms of the CBA pending the negotiation and execution of a successor agreement.  (*See* Doc. 2, Att. 2, Ex. A at 1).

the procedures to be followed for filing and appealing grievances. (*Id*. at 7). Section 1 provides

that grievances must be raised within thirty days following the occurrence giving rise to the

grievance, or within thirty days of the first knowledge of the facts giving rise to the grievance.[6]

(*Id*.). Grievances arising out of the interpretation or enforcement of the CBA must be settled

between the relevant employer and the Union, if possible. (*Id*.). Section 2 provides that

grievances not settled under Section 1 may be appealed to a Local Joint Adjustment Board.[7] (*Id*.).

Notices of appeal must be given within thirty days after the termination of the procedures

described in Section 1.[8]  (*Id*. at 8).

The Local Joint Adjustment Board must meet no more than fourteen days following the

request for its services, unless the time is extended by mutual agreement of the parties or the Local

Joint Adjustment Board. (*Id*. at 7). The Local Joint Adjustment Board consists of equal numbers

of representatives of the Union and the employer. (*Id*.). At a hearing before the Local Joint

Adjustment Board, the charging party must submit evidence, including witnesses and/or affidavits

in support of the charges, and the defending party must have an opportunity to present evidence,

---

[6] This requirement is also included in the Summary of Procedural Rules for Local Joint Adjustment Board Proceedings. (*See* Doc. 2, Att. 5, Ex. N at 1).

[7] Section 7 provides that the failure to exercise the right of appeal within the required time period voids any right of appeal applicable to the facts and remedies of the grievances involved. (Doc. 2, Att. 2, Ex. A at 8).

[8] The charging party must "spell out explicitly the violation of the agreement complained of, including therein a clear definition of the dispute . . . [and] [t]he defending party must be given a copy of the charges filed against him in time for him to prepare his defense." (Doc. 2, Att. 5 at 20; *see also* Doc. 2, Att. 5, Ex. N at 1 (stating that a dispute submitted to the Local Joint Adjustment Board must state the specific provision of the CBA alleged to have been violated, the facts giving rise to the dispute, and the position of the grieving party)).

and may introduce witnesses or affidavits, and may cross-examine witnesses.[9]  (Doc. 2, Att. 5, Ex.

M at 20).

Section 5 provides that Local Joint Adjustment Boards are empowered to render decisions

and grant relief to either party as necessary, including the award of damages or other

compensation.  (Doc. 2, Att. 2, Ex. A at 8).  Except in cases of deadlock, the decision of the Local

Joint Adjustment Board is final and binding.[10]  (*Id*. at 7).  Individuals that serve as members of a

Local Joint Adjustment Board act as arbitrators, and thus are "generally immune from civil

liability for their decisions, so long as they are acting without bias and within the scope of their

authority."  (Doc. 2, Att. 5, Ex. N at 45).

2) *The grievances and submission to the Local Joint Adjustment Board*

On February 28, 2005, the Union filed a grievance (the "February Grievance") for actions

allegedly committed by PMI, PAC and PACB, when they allegedly employed non-union workers

performing work "within the trade and territorial jurisdiction of the Agreement/Union," in

---

[9] *See* Doc. 2, Att. 5, Ex. N at 45 (stating that the grieved party "must be allowed to present defenses, introduce witnesses or affidavits, and may cross examine witnesses.").

[10] Grievances not settled as provided in section 3 of Article 10 may be appealed to the National Joint Adjustment Board.  (Doc. 2, Att. 2, Ex. A at 8).  Section 4 of Article 10 expressly incorporates the Procedural Rules of the National Joint Adjustment Board.  (*Id*.).

violation of the CBA.[11]   (*See* Doc. 2, Att. 2, Ex. B).   The Union did not appeal the February

Grievance to Florida SMACNA.

On April 28, 2005, the Union filed another grievance (the "April Grievance") containing

the same language as the February Grievance.  (*See* Doc. 2, Att. 2, Ex. C).  The Union appealed

the April Grievance to Florida SMACNA on May 5, 2005, and requested that a Local Joint

Adjustment Board be convened to hear the grievance.  (*See id*. at Ex. D).  Accordingly, Florida

SMACNA was designated as the arbitral forum.

*3) Hearing in front of the Local Joint Adjustment Board*

Counsel for the Plaintiffs was notified on June 7, 2005, that the Local Joint Adjustment

Board had scheduled a hearing for June 10, 2005, to consider the Union's April Grievance.  On

June 7, 2005, PMI's president spoke with the Union's Assistant Business Manager, who verbally

agreed to a continuance of the hearing.  (*See* Doc. 2, Att. 3, Ex. F and G).  That same day, PMI's

president faxed a confirmation of that agreement to Karr at Florida SMACNA.[12]  (*See id*. at Ex. F).

On June 8, 2005, Plaintiff's counsel spoke with Karr to attempt a rescheduling of the hearing.

Karr initially told Plaintiff's counsel that "there was no problem with the continuance."  However,

---

[11] PACB provides residential and light commercial air conditioning and refrigeration sales and service.  To do so, PACB employed both Union members and non-Union air conditioning and refrigeration service technicians and helpers.  PMI's position was that these non-Union workers were necessary because Union members (sheet metal workers) are neither permitted nor trained to perform the work of air conditioning and refrigeration service technicians, and thus the non-Union workers were outside the scope of the Union's jurisdiction. (Doc. 29, Att. 2, Ex. A).  The Union believed that these non-Union workers were performing work within the trade and territorial jurisdiction of the Union, and that these non-Union workers were employed in violation of the CBA. (Doc. 2, Att. 2, Ex. B).

[12] At that time, Karr served as Florida SMACNA'a Executive Vice President.

on June 9, 2005, the Union's Assistant Business Manager stated that there would be no

continuance because PMI had not given a reasonable excuse for postponing the hearing, and that

the hearing would take place on June 10, 2005, the date initially requested by PMI.  (*See* Doc. 2,

Att. 3 at 13).  Later that same day, Karr advised Plaintiff's counsel that the Union's Assistant

Business Manager would not postpone the hearing.  (*See* Doc. 2, Att. 3, Ex. I).

Thus, on June 10, 2005, PMI's President, along with Plaintiff's counsel, attended the Local

Joint Adjustment Board[13] hearing concerning the Union's April Grievance, and raised objections

to the Local Joint Adjustment Board's jurisdiction and to alleged procedural irregularities in

violation of the CBA and the Local Joint Adjustment Board's rules.  On June 24, 2005, Plaintiff's

counsel submitted to the Local Joint Adjustment Board certain evidence regarding certifications

held by the Plaintiffs' employees, as well as written objections to the manner in which the Local

Joint Adjustment Board conducted the hearing.[14]  (*See* Doc. 2, Att. 4, Ex. J).

Plaintiff's counsel also asserted that: (1) the Union was aware of the issues presented to the

Local Joint Adjustment Board no later than February 28, 2005, when the Union first submitted a

grievance to PMI; (2) the February Grievance is identical to the April Grievance which was first

---

[13] The Local Joint Adjustment Board included Carver, Jeske and Sinclair, as well as one other individual who is not a party to this suit.

[14] Specifically, those objections included: (1) the Union failed to file a grievance within thirty days of the date of the occurrence in question; (2) the Union did not give specific notice of the CBA provision that was violated, and failed to provide factual support in advance of the hearing; (3) the Union failed to attempt to resolve the grievance through a direct meeting with PMI; and (4) the Union failed to submit its grievance to the Local Joint Adjustment Board within thirty days of the termination of the parties' efforts to resolve the grievance between themselves because, assuming there was a meeting at which the grievance was discussed ( Plaintiff's counsel asserts, in the letter to the Local Joint Adjustment Board, that a March 6, 2005 meeting between PMI and the Union did not cover the topic of the grievance in question), this meeting took place more than thirty days before the date the Union submitted the grievance to the Local Joint Adjustment Board.  (Doc. 2, Att. 4, Ex. J at 1-2).

forwarded to Florida SMACNA on May 5, 2005; (3) the Union "advanced" the date on the copy of

the grievance submitted to Florida SMACNA by two months; (4) because the grievances were

identical, and because the Union "advanced" the date of the later grievance, it was clear that the

Union failed to submit its grievance to Florida SMACNA within the required time period; and (5)

even if the April Grievance was the first grievance filed with PMI, the Union failed to follow the

requirement that it meet with PMI prior to submitting the grievance to the Local Joint Adjustment

Board.  (*Id*. at 2-3).  Finally, Plaintiff's counsel noted that the Board would not permit PMI to

present witnesses to address the allegations raised by the Union at the hearing.  (*Id*. at 3).

PMI also submitted an affidavit stating that the reason PMI/PACB did not utilize Union

members for certain work was that Union members were not qualified.  (*See* Doc. 2, Att. 4 at 11).

More specifically, PMI asserted that PACB installs, services and repairs HVAC (heating,

ventilation, and/or air conditioning) systems, for which PACB employs specialized workers.  (*Id*.

at 9).  Because of the type of work associated with HVAC systems, those workers must be

properly trained and certified in a number of areas.  (*Id*. at 11).  Sheet metal workers, including

those represented by the Union, do not have the proper training, because they are not EPA-

qualified to handle refrigerants, and are not properly trained in the necessary electrical work.  (*Id*.).

*4) The Local Joint Adjustment Board's decision*

The Local Joint Adjustment Board issued a unanimous decision regarding the April

Grievance on August 15, 2005, in which it specifically found that: (1) all procedural requirements

had been met; (2) the grievance was timely; (3) the grievance was properly before the Local Joint

Adjustment Board for consideration; (4) PMI/PACB were co-mingled in that they had

substantially identical management, ownership, business purpose, operation, equipment and

customers; (5) the creation of a second company was for the purpose (at least in part) of avoiding the requirements of the CBA; (6) because one company was essentially the alter ego of the other, they would be treated as a single employer subject to the terms of the CBA; (7) the company violated the CBA; (8) due to the violation, PMI/PACB were liable for damages in the amount of $232,130.85; and (9) PMI/PACB would be given an opportunity to substantiate the amount of actual damages by providing relevant payroll records to the Local Joint Adjustment Board.  (*See* Doc. 2, Att. 5, Ex. L).

### C. Claims and Arguments[15]

The Plaintiffs originally filed this action in State court.  The Defendants removed based on Federal question jurisdiction, specifically Section 301 of the Labor Management Relations Act. The Plaintiff has not sought remand.[16]

In Count I, the Plaintiffs seek to enjoin the enforcement of the Local Joint Adjustment Board's August 15, 2005 decision.  The Plaintiffs assert that (1) there was a bias against them at the hearing because they were represented by counsel; (2) the Defendants violated Article 10 of the CBA by failing to comply with certain procedures; (3) the Defendants violated both the CBA and various procedural rules by permitting the Union to submit the same grievance twice; (4) the

---

[15] Both in their Response and at the hearing on this matter, the Plaintiffs stated that they withdraw Counts VI, VII and VIII, inasmuch as those claims specifically relate to alleged breaches of the CBA.  Although in their Response (and at the hearing) the Plaintiffs attempted to re-cast these claims as breach of contract claims, the Plaintiffs have not sought leave to file an amended complaint, and thus the Court will not address those three Counts here.  Therefore, the only Defendants remaining at this time are Florida SMACNA, Karr, Carver, Jeske and Sinclair, against whom Counts I through V are asserted.

[16] However, both in their Response and at the hearing, the Plaintiffs suggested that the Court does not have subject matter jurisdiction.

Union's April grievance was heard by the Local Joint Adjustment Board in violation of Article 10, section 7 of the CBA which voids future rights to appeal if original appeal procedures are not followed; (5) a damages penalty was assessed against the Plaintiffs despite a lack of evidence to support the figure arrived at; (6) by disregarding various procedural requirements, Florida SMACNA, Karr, Carver, Jeske and Sinclair have facilitated Florida SMACNA's breach of the CBA and the Union's failure to bargain in good faith with PMI; and (7) the failure to adhere to the CBA and to bargain in good faith has resulted in the certainty that the Local Joint Adjustment Board will impose upon PMI a severe monetary penalty without any factual or legal basis for doing so, leaving the Plaintiffs without an adequate remedy at law.

In Count II, the Plaintiffs re-allege the various deficiencies they associate with the grievance process, and seek a declaratory judgment stating that the Defendants have failed to comply with, and must comply in the future with, the requirements of the Joint Adjustment Board rules. In Count III, the Plaintiffs assert that the Local Joint Adjustment Board serves as a board of arbitrators, and thus is subject to the Florida Arbitration Code. The Plaintiffs allege that the Local Joint Adjustment Board's August 15, 2005 decision violated several provisions of the Florida Arbitration Code, including Florida Statutes section 682.13(1), resulting in the certainty that the Local Joint Adjustment Board will impose a severe penalty on PMI without any factual or legal basis for doing so, and in violation of the Florida Arbitration Code. Thus, the Plaintiffs allege, they are in doubt as to their rights under the CBA and they do not have an adequate remedy at law to redress the enforcement of the Local Joint Adjustment Board's August 15, 2005 decision. Accordingly, the Plaintiffs seek a declaratory judgment stating that the Defendants have failed to comply with, and must comply in the future with, the Florida Arbitration Code.

In Count IV, the Plaintiffs assert that under the Florida Arbitration Code, a party to an

arbitration has the right to be represented by an attorney at any arbitration or hearing, but that

certain Local Joint Adjustment Board Rules are "designed to intimidate, limit and restrict the

participation of attorneys to being mere observers in [Local Joint Adjustment Board] hearings in

contravention of a party's right to be represented by counsel." (Doc. 2 at 15). The Plaintiffs allege

that the implementation of these rules effectively denied the Plaintiffs the right to counsel at the

Local Joint Adjustment Board hearing, resulting in a certainty that the Plaintiffs will incur

damages in the form of a severe monetary penalty. Thus, the Plaintiffs seek a declaratory

judgment requiring that Local Joint Adjustment Board Rules II.E.1 and II.E.2 be stricken from the

[Local Joint Adjustment Board's] rules.

In Count V, pursuant to Florida Statute section 682.13(1), the Plaintiffs seek a judgment

vacating the award required by the Local Joint Adjustment Board's August 15, 2005 decision,

because they allege that the Defendants violated various provisions of the Florida Arbitration

Code.[17]

Because the Plaintiffs withdrew Counts VI through VIII, what remains are essentially two

claims. First, that Florida SMACNA is obliged by an implied contract to follow its arbitration

rules and that its failure to do so violates a contractual obligation to the Plaintiffs. Second, that the

individual defendants are liable for this failure to comply with the rules.

---

[17] In both Counts III and V, the Plaintiffs do not provide any factual allegations detailing how the Defendants allegedly violated the Florida Arbitration Code. Instead, the Plaintiffs merely cite four sections of that Code, which is, on its face, a conclusory legal assertion that is insufficient to state a claim for relief.

The Defendants assert that these claims must be dismissed because: (1) the Norris LaGuardia Act, 29 U.S.C. § 101, *et seq.*, precludes the Court from issuing injunctions in cases involving labor disputes, particularly those involving arbitration proceedings; (2) the Plaintiffs' state law claims are pre-empted by Section 301 of the Labor Management Relations Act, 29 U.S.C. § 185 ("LMRA"); and (3) SMACNA and the individual defendants are entitled to arbitral immunity.

## II.    Standard of Review

In ruling on a motion to dismiss, this Court must view the complaint in the light most favorable to the Plaintiff, *Cannon v. Macon County*, 1 F.3d 1558, 1565 (11th Cir. 1993), and must limit its consideration to the pleadings and any exhibits attached thereto.  FED. R. CIV. P. 10(c); *see also GSW, Inc. v. Long County, Ga.*, 999 F.2d 1508, 1510 (11th Cir. 1993).  The Court will liberally construe the complaint's allegations in the Plaintiffs' favor, *Jenkins v. McKeithen*, 395 U.S. 411, 421 (1969), and will not dismiss a complaint for failure to state a claim unless it appears beyond a doubt that the Plaintiff cannot prove any set of facts that support a claim for relief. *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957).  In ruling on a motion to dismiss, "conclusory allegations, unwarranted factual deductions or legal conclusions masquerading as facts will not prevent dismissal." *Davila v. Delta Air Lines, Inc.*, 326 F.3d 1183, 1185 (11th Cir. 2003).

In reviewing a complaint on a motion to dismiss under Federal Rule of Civil Procedure ("Rule") 12(b)(6), "courts must be mindful that the Federal Rules require only that the complaint contain a short and plain statement of the claim showing that the pleader is entitled to relief." *U.S. v. Baxter Intern., Inc.*, 345 F.3d 866, 880 (11th Cir. 2003) (*citing* FED. R. CIV. P. 8(a)).  This is a liberal pleading requirement, one that does not require a plaintiff to plead with particularity every

element of a cause of action.  *Roe v. Aware Woman Ctr. for Choice, Inc.*, 253 F.3d 678, 683 (11th

Cir. 2001).  Instead, the complaint need only "contain either direct or inferential allegations

respecting all the material elements necessary to sustain a recovery under some viable legal

theory."  *Id*. (internal citation and quotation omitted).  "A complaint need not specify in detail the

precise theory giving rise to recovery. All that is required is that the defendant be on notice as to

the claim being asserted against him and the grounds on which it rests."  *Sams v. United Food and*

*Comm'l Workers Int'l Union*, 866 F.2d 1380, 1384 (11th Cir. 1989).

## III.     Legal Analysis

A. Pre-Emption by Federal Labor Law

Section 301 provides, in relevant part:

> Suits for violation of contracts between an employer and a labor organization
> representing employees in an industry affecting commerce as defined in this
> chapter, or between any such labor organizations, may be brought in any district
> court of the United States having jurisdiction of the parties, without respect to the
> amount in controversy or without regard to the citizenship of the parties.

29 U.S.C. § 185(a).  Accordingly, the Supreme Court has concluded "that the substantive law to

apply in suits under [Section] 301(a) is federal law, which the courts must fashion from the policy

of our national labor laws."  *Textile Workers Union of Am. v. Lincoln Mills of Ala.*, 353 U.S. 448,

456 (1957); *see also Local 174, Teamsters, Chauffeurs, Warehousemen & Helpers of Am. v. Lucas*

*Flour Co.*, 369 U.S. 95, 103-104 (1962) ("The dimensions of [Section] 301 require the conclusion

that substantive principles of federal labor law must be paramount in the area covered by the

statute. . . . [I]n enacting [Section] 301 Congress intended doctrines of federal labor law uniformly

to prevail over inconsistent local rules.").  Thus, a "state rule that purports to define the meaning or

scope of a term in a contract suit . . . is pre-empted by federal labor law." *Allis-Chalmers Corp. v.*

*Lueck*, 471 U.S. 202, 210 (1985).

Section 301 governs both claims directly founded on rights created by collective bargaining

agreements, and claims substantially dependent upon the analysis of such an agreement.[18] *Lingle*

*v. Norge Div. of Magic Chef, Inc.*, 486 U.S. 399, 410 n.10 (1988).  Therefore, the "application of

state law is pre-empted by [Section 301] . . . only if such application requires the interpretation of a

collective-bargaining agreement." *Id*. at 413.  Accordingly,

> if the resolution of a state-law claim depends upon the meaning of a collective-
> bargaining agreement, the application of state law (which might lead to inconsistent
> results since there could be as many state-law principles as there are States) is pre-
> empted and federal labor-law principles -- necessarily uniform throughout the
> Nation -- must be employed to resolve the dispute.

*Id*. at 406.  The Supreme Court has therefore concluded that "when resolution of a state-law claim

is substantially dependent upon analysis of the terms of an agreement made between the parties in

a labor contract, that claim must either be treated as a § 301 claim, or dismissed as pre-empted by

federal labor-contract law." *Allis-Chalmers*, 471 U.S. at 220 (internal citation omitted).

*1) Plaintiffs' claims depend on the CBA*

Each of the Plaintiffs' claims asserts, whether directly or indirectly, a violation of certain

rights that arise from the CBA.  In Count I, the Plaintiffs directly assert that Florida SMACNA,

Karr, Carver, Jeske and Sinclair violated the CBA.  (*See* Doc. 2, par. 35, 37, 38, 39, 40).  Further,

the Plaintiffs assert that these Defendants violated the National Joint Adjustment Board's rules

---

[18] However, "not every dispute tangentially involving a provision of a collective-bargaining agreement[] is pre-empted by § 301." *Lingle*, 486 U.S. at 413 n.12 (internal citation, quotation and punctuation omitted).

which, as the Plaintiffs acknowledge in their Complaint, are incorporated into the CBA.  (*See* Doc.

2 at 2; Doc. 2, Att. 2 at 8).  In Count II, the Plaintiffs assert that Florida SMACNA, Karr, Carver,

Jeske and Sinclair violated the CBA, and that the Plaintiffs are in doubt as to their rights under the

CBA.  (*See* Doc. 2 at par. 43).  In Count III, although the Plaintiffs couch this claim in terms of a

violation of the Florida Arbitration Code, it is clear that such violation arises out of the

Defendants' alleged violation of the procedures established by and incorporated in the CBA.  This

conclusion is made even more clear in that the Plaintiffs assert that as a result of the Defendants'

alleged violation of the Florida Arbitration Code, the Plaintiffs are in doubt as to their rights under

the CBA.  (*See* Doc. 2 at par. 49).  Counts IV and V similarly assert that the Plaintiffs have been

damaged as a result of violations of the Local Joint Adjustment Board's rules, as well as of the

CBA, (*see* Doc. 2 at par. 54), and are little more than restatements of the earlier claims.[19]

Therefore, the Plaintiffs' claims depend on the CBA.

 *2) Federal question jurisdiction*[20]

 "The federal district courts have jurisdiction over suits for violations of contracts between

an employer and a labor organization under [Section 301]."  *In re Carter*, 618 F.2d 1093, 1103

---

 [19] Even without the explicit references to the CBA in the Complaint, it would still be clear that this case arises out of, or depends upon, a collective bargaining agreement, inasmuch as it is clear that the Plaintiffs are asserting that they have been or will be damaged as a result of the alleged violations of certain rights to which they are only entitled based on procedures established by, and/or incorporated into, the CBA.  Not only does the present case arise out of a dispute regarding the procedural aspect of a collective bargaining agreement, but the original underlying dispute, arising as it did from a question of whether certain workers were covered by the CBA, is unquestionably a labor dispute.

 [20] "To exercise federal court jurisdiction under section 301, [a court] must find (1) a claim for violations of (2) a contract (3) between an employer and a labor organization." *United Paperworkers Int'l. Union v. Int'l Paper Co.*, 920 F.2d 852, 859 (11th Cir. 1991).  Clearly those requirements are met in this case.  (*See* discussion in section IV(A)(1), *supra*).

(5th Cir. 1980);²¹ *see also Avco Corp. v. Aero Lodge No. 735, Int'l Ass'n of Machinists &*

*Aerospace Workers*, 390 U.S. 557, 560 (1968) (claim under a collective bargaining agreement

arises under the laws of the United States and is within the meaning of original jurisdiction of the

District Courts within the meaning of 28 U.S.C. §§ 1441(a) and (b)).  Inasmuch as this case arises

out of a dispute regarding the rights and procedures to which the Plaintiffs claim they are entitled

under a collective bargaining agreement (the very essence of a labor dispute), the Court has subject

matter jurisdiction over this case.

　　　*3) Plaintiffs' claims are pre-empted*

　　　The Plaintiffs' claims, based as they are upon procedures and rights established by and

incorporated in the CBA, would require the Court to analyze the language of the CBA to

determine whether the Defendants abided by its terms.  Thus, the Plaintiffs' claims,

notwithstanding the Plaintiffs' attempts to couch them solely in terms of state contract law, are

pre-empted by Section 301.  *See United Steelworkers of Am., AFL-CIO-CLC v. Rawson*, 495 U.S.

362, (1990) (where claim would require court to ascertain nature of rights under collective

bargaining agreement, claim could not withstand pre-emptive force of Section 301); *Turner v. Am.*

*Fed'n of Teachers Local 1565*, 138 F.3d 878, 884 (11th Cir. 1998).  Accordingly, the Plaintiffs'

claims must be dismissed.  *See Deakins v. U.S. Postal Serv.*, 146 F. Supp. 2d 1290, 1293 (M.D.

Fla. 2001); *Williams v. Lear Operations Corp.*, 73 F. Supp. 2d 1377, 1382 (N.D. Ga. 1999).

　　　B. Plaintiffs' "Implied Contract" Theory

　　　The Plaintiffs argue that this case ultimately boils down to the issue of whether the

individual defendants and Florida SMACNA did what they promised to do when they agreed to

　　　²¹ All decisions of the Fifth Circuit issued prior to October 1, 1981, are binding precedent on courts within the Eleventh Circuit.  *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981).

arbitrate this dispute.  In other words, according to the Plaintiffs, when Florida SMACNA agreed

to arbitrate this dispute, at that point Florida SMACNA (and possibly the individual Defendants)

entered into an implied contract with the Plaintiffs (and the Union) to follow its own rules and

procedures.  The Plaintiffs, however, offer no authority to support this novel position, nor has the

Court found any.[22]  Further, the Plaintiffs do not assert claims against the individual Defendants

and Florida SMACNA for exceeding their powers (or for any other violation of Federal labor law).

Instead, according to the Plaintiffs, their claims against these Defendants are based on alleged

violations of procedural rules on an implied contract theory, which not only appears to have no

support in law, but seems to contradict well-established principles of contract law.  Therefore, the

Court rejects the Plaintiffs' theory.[23]

C. Arbitral Immunity

The concept of judicial immunity has been extended not only to public officials, but to

private citizens such as arbitrators in circumstances where these individuals perform the function

---

[22] Indeed, in the only case the Court was able to find in which a similar argument was presented, where a plaintiff claimed "to be a third-party beneficiary of the arbitrator's implied contract with the Federal Mediation & Conciliation Service requiring the arbitrator to comply with its regulations," the court simply commented that the plaintiff's argument was part of a "strange mixture of theories," and did not address it further.  *Hill v. Aro Corp.*, 263 F. Supp. 324, 326 (N.D. Ohio 1967).  In this case, the basis for the Plaintiffs' claim is entirely unclear because their Complaint is devoid of any facts to support their theory: they have not asserted that they are the third party beneficiary of a contract between the Union and Florida SMACNA, nor have they asserted that the existence of a specific contract among the Union, Plaintiffs and Florida that arose when this arbitration process began.  Instead, the Plaintiffs simply have attempted to manufacture an *implied* contract out of the mere circumstance by which Florida SMACNA became involved in the arbitration.

[23] In any event, the Plaintiffs appear to have made this "implied contract" argument solely in regard to those Counts (VI, VII and VIII) which they subsequently withdrew at the hearing and thus, regardless of the manner in which the Plaintiffs attempt to support those claims, they have been rendered invalid at this point.

of resolving disputes between parties or adjudicating private rights.  *Antoine v. Byers & Anderson, Inc.*, 508 U.S. 429, 433 n.8 (1993); *Olson v. Nat'l Ass'n of Sec. Dealers*, 85 F.3d 381, 382 (8th Cir. 1996) (because the arbitrator's role is functionally equivalent to that of a judge, courts of appeal have uniformly extended judicial and quasi-judicial immunity to arbitrators); *Tamari v. Conrad*, 552 F.2d 778, 780 (7th Cir. 1977).  Courts have determined that arbitral immunity is "essential to protect the decision-makers from undue influence and protect the decision-making process from reprisals by dissatisfied litigants."  *New England Cleaning Servs., Inc. v. Am. Arbitration Ass'n*, 199 F.3d 542, 545 (1st Cir. 1999).

Accordingly, arbitrators are immune from civil liability for all acts performed in their arbitral capacity.[24]  *Austern v. Chicago Bd. Options Exch., Inc.*, 898 F.2d 882, 886 (2nd Cir. 1990) (arbitrator absolutely immune from liability in damages for all acts within scope of arbitral process, including allegations of defective notice and improper selection of arbitration panel).  Moreover, the commercially sponsoring organization is entitled to immunity for all functions integrally related to the arbitral process, *id*.; *see also New England Cleaning*, 199 F.3d at 545, and is even entitled to immunity when its actions violate the organization's own rules.  *Olson*, 85 F.3d at 383; *see also Corey v. N.Y. Stock Exch.*, 691 F.2d 1205, 1208-1209 (6th Cir. 1982) (in suit against organization alleging wrongdoing by arbitrators for which organization was allegedly liable, where allegations included selection of panel in violation of organization's rules, scheduling hearings over plaintiff's objections, refusing to allow plaintiff to present evidence, and

---

[24] Arbitrators have been found to be immune from suit where only equitable relief is sought. *See Tamari*, 552 F.2d at 780-81.

prejudgment of plaintiff's claims, organization, acting through arbitrators, was immune from civil

liability for acts of arbitrators arising out of contractually agreed upon arbitration proceedings).

In this case, in each of their claims against Florida SMACNA, Karr, Carver, Jeske and

Sinclair, the Plaintiffs seek relief from the arbitration award on the grounds of alleged violations of

the CBA and related procedural rules.  (*See* discussion of specific allegations in section I(C),

*supra*).  These are precisely the type of claims against which arbitrators (Carver, Jeske and

Sinclair) and sponsoring organizations (Florida SMACNA and Karr) are protected by the doctrine

of arbitral immunity.  Accordingly, Counts I through V will be dismissed.[25]

## IV.     Conclusion

For the reasons stated herein, it is

**ORDERED THAT** the Defendants' Motions to Dismiss (Docs. 16, 18 and 20) are

GRANTED, and the Plaintiffs' Complaint is DISMISSED.  The Plaintiffs may file an amended

complaint consistent with this Order within twenty (20) days.

**DONE** and **ORDERED** in Chambers, Orlando, Florida on December 2, 2005.

GREGORY A. PRESNELL
UNITED STATES DISTRICT JUDGE

---

[25] Arbitration awards may be vacated where the arbitrators exceeded their powers or acted in manifest disregard of the law, such as where the arbitrators knew of, and yet either refused to apply or ignored, well-defined law that was clearly applicable to the case. *Banco de Seguros del Estado v. Mutual Marine Office, Inc.*, 344 F.3d 255, 262-63 (2nd Cir. 2003).  Further, although arbitrators may be immune from suit based on a wrongful exercise of jurisdiction, *Int'l Med. Group, Inc. v. Am. Arbitration Ass'n, Inc.*, 312 F.3d 833, 844 (7th Cir. 2002), they are not entitled to immunity when the pleadings, on their face, signal a "clear absence of jurisdiction." *New England Cleaning*, 199 F.3d at 545-46.  As yet, the Plaintiffs have provided no factual allegations to even suggest that the above grounds exist.  There do not appear to be any grounds upon which the Plaintiffs could base an amended claim(s) against these Defendants.  Thus, if the Plaintiffs re-file claims against them, the Plaintiffs are advised to be mindful of the restrictions set forth in Federal Rule of Civil Procedure 11.

Copies furnished to:

Counsel of Record
Unrepresented Party